Opinion issued April 17, 2008 





 



 










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00729-CV

____________


UNIVERSITY OF TEXAS MEDICAL BRANCH, Appellant


V.


LYNDA RAILSBACK, Appellee






On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 07CV0234






O P I N I O N

 In this interlocutory appeal, (1) appellant, the University of Texas Medical Branch
("UTMB"), challenges the trial court's August 2, 2007 order denying its motion to
dismiss the health care liability claims made against UTMB by appellee, Lynda
Railsback. (2) In its sole issue, UTMB contends that the trial court erred in not
dismissing Railsback's health care liability claims on the ground that her submitted
"expert report was [deficient] and did not represent a good faith effort to comply
with" section 74.351 of the Texas Civil Practice and Remedies Code. (3)

 We affirm in part and reverse and render in part.

Procedural Background

 In her first amended original petition, filed on February 27, 2007, Railsback
sued UTMB, Dr. Frank M. Ivey, Jr., and Dr. Seth Maxwell, (4) alleging that, when
conducting surgery on her right knee, "Railsback underwent a tibial tubercle elevation
in which a tourniquet was placed on her extremity prior to the beginning of the
surgery," causing her, through their negligence, to suffer nerve damage in her right
foot. Railsback specifically alleged that UTMB was negligent in (1) "failing to
monitor its physicians and employees and to provide competent medical staff to
ensure [Railsback's] safety," and (2) "acting through [its] board of trustees, hospital
committees, staff physicians, administrative personnel, agents, ostensible agents,
agents by estoppel, and employees, engaged in . . . acts and omissions, . . .
constituting negligence, negligent supervision[,] and failure to properly train [its]
employees and staff physicians in the proper technique and positioning of a
tourniquet." Railsback further alleged that UTMB was vicariously liable for the "acts
and omissions of [its] employees and agents." 

 On June 21, 2007, Railsback provided UTMB with the expert report (5) of Dr.
James A. Ghadially, M.D. On July 11, 2007, UTMB filed its "Objections to
Plaintiff's Expert Report and CV and Motion to Dismiss." UTMB objected to Dr.
Ghadially's report as deficient and requested a "dismissal" of Railsback's claims. (6) 
Railsback filed a response, and, on August 2, 2007, the trial court entered a written
order denying UTMB's "[o]bjections." Subsequently, on August 24, 2007, UTMB
filed its notice of appeal, challenging the trial court's interlocutory order.

Expert Report

 In its sole issue, UTMB argues that the trial court erred in denying UTMB's
motion to dismiss because Dr. Ghadially's expert report does not "discuss each of [the
three] elements with sufficient specificity [under Texas Civil Practice and Remedies
Code section 74.351(r)(6)] to inform UTMB of the conduct that Railsback has called
into question [or] provide a basis for the trial court to conclude that the claims have
merit." (7) UTMB asserts that the cause must be dismissed as it "does not represent an
objective good faith effort" to comply with Texas Civil Practice and Remedies Code
section 74.351(l). (8) 

 We review a trial court's decision on a section 74.351(b) motion to dismiss for
an abuse of discretion. See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 875 (Tex. 2001) (citing predecessor statute); Gray v. CHCA Bayshore
L.P., 189 S.W.3d 855, 858 (Tex. App.--Houston [1st Dist.] 2006, no pet.). A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to guiding rules or principles. See Garcia v. Martinez, 988 S.W.2d 219,
222 (Tex. 1999). When reviewing matters committed to the trial court's discretion,
we may not substitute our own judgment for that of the trial court. Mem'l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion
merely because it decides a discretionary matter differently than an appellate court
would in a similar circumstance. Gray, 189 S.W.3d at 858. However, a trial court
has no discretion in determining what the law is or in applying the law to the facts. 
Walker v. Palker, 827 S.W.2d 833, 840 (Tex. 1992); Baylor Univ. Med. Ctr. v. Biggs,
237 S.W.3d 909, 916 (Tex. App--Dallas 2007, pet. filed). 

 Here, the issue is whether Dr. Ghadially's report represents an objective good
faith effort to comply with the statutory definition of an expert report. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2007); Palacios, 46 S.W.3d at
878. The definition requires "a fair summary of the expert's opinions as of the date
of the report regarding applicable standards of care," "the manner in which the care
rendered by the physician or health care provider failed to meet the standards," and
"the causal relationship between that failure and the injury, harm, or damages
claimed." Tex. Civ. Prac. & Rem. Code Ann. 74.351(r)(6) (Vernon Supp. 2007). 
If a plaintiff timely files an expert report and the defendant moves to dismiss because
of the report's inadequacy, a trial court must grant the motion "only if it appears to
the court, after hearing, that the report does not represent an objective good faith
effort to comply with the definition of an expert report in Subsection (r)(6)." Id. §
74.351(l). 

 The only information relevant to our inquiry is within the four corners of the
report. Palacios, 46 S.W.3d at 878. A report need not marshal all the plaintiff's
proof, but it must include the expert's opinion on each of the elements identified in
the statute. Id. In setting out the expert's opinions on each of those elements, the
report must provide enough information to fulfill two purposes to constitute a good
faith effort. Id. at 879. First, the report must inform the defendant of the specific
conduct that the plaintiff has called into question. Id. Second, and equally important,
the report must provide a basis for the trial court to conclude that the claims have
merit. Id.

 A report that merely states the expert's conclusions about the standard of care,
breach, and causation does not fulfill these two purposes. Id. Rather, the expert, in
his report, must explain the basis of his statements to link his conclusions to the facts. 
Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). Also, a report cannot
meet these purposes and constitute a good faith effort if it omits any of the statutory
requirements. Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). 
However, to avoid dismissal, a plaintiff need not present evidence in the report as if
it were actually litigating the merits. Palacios, 46 S.W.3d at 879. The report can be
informal in that the information in the report does not have to meet the same
requirements as the evidence offered in a summary judgment proceeding at trial. Id.

 Identifying the standard of care is critical: whether a defendant breached his
or her duty to a patient cannot be determined absent specific information about what
the defendant should have done differently. Id. at 880. While a "fair summary" is
something less than a full statement of the applicable standard of care and how it was
breached, even a fair summary must set out what care was expected, but not given. 
Id. 

 When a plaintiff sues more than one defendant, the expert report must set forth
the standard of care for each defendant and explain the causal relationship between
each defendant's individual acts and the injury, i.e., "[c]ollective assertions of
negligence against various defendants are inadequate." Taylor v. Christus Spohn
Health Sys. Corp., 169 S.W.3d 241, 244 (Tex. App.--Corpus Christi 2004, no pet.);
see CHCA Mainland L.P. v. Burkhalter, 227 S.W.3d 221, 227 (Tex. App.--Houston
[1st Dist.] 2007, no pet.). This includes a hospital if a plaintiff is alleging that the
hospital itself was directly negligent, rather than just alleging that the hospital was
liable due to vicarious liability. Biggs, 237 S.W.3d at 912, 919 (Tex. App.--Dallas
2007, pet. filed) (finding that reports did not satisfy required elements of expert report
when hospital sued for malpractice); Burkhalter, 227 S.W.3d at 224, 227 (holding
that report did not satisfy required elements of expert report when hospital sued for
negligence); but see Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex.
App.--Dallas 2006, no pet.) (concluding that plaintiffs need not mention hospital in
expert report when plaintiffs limited their claim against hospital to vicarious liability
for employees). 

UTMB's Vicarious Liability Based on the Acts and Omissions of Dr. Maxwell and
Direct Liability

 

 UTMB first argues, essentially, that Railsback did not serve any expert report
at all as to UTMB's vicarious liability based on the acts and omissions of Dr.
Maxwell because it does not detail Dr. Maxwell's "appropriate standard of care[,]
how that standard of care was breached[,] or how the breach caused injury." UTMB
also argues, essentially, that Railsback did not serve any expert report at all as to
UTMB's direct liability because "it makes no mention of UTMB's standard of care,
how [UTMB] breached each standard of care[,] or a causal relationship between the
alleged breach and any alleged injury." 

 In her petition, Railsback alleges that UTMB is vicariously liable for Dr.
Maxwell's "negligent" acts. Railsback also alleges in her petition that UTMB is
directly liable for "failing to monitor its physicians . . . and to provide competent
medical staff," "negligent supervision," and "failure to properly train" its "employees
and staff physicians." 

 Limiting our analysis to the four corners of Dr. Ghadially's expert report, Dr.
Ghadially only mentions Dr. Maxwell once: "Medical records operative report on
03/14/2005 from Dr. Seth C. Maxwell and Dr. Frank Ivey." Also, other than stating
that he reviewed UTMB's records, Dr. Ghadially only mentions UTMB twice in his
report. The first reference occurs in a header, which states, "Damages Proximately
Caused by . . . UTMB . . . Operating Room Person[n]el's Breach of the Applicable
Standard of Care." The second reference occurs directly underneath that header,
which asserts, "Railsback has been damaged as a proximate cause of the above
breaches in the standard of care by Dr. Frank Ivey and UTMB." 

 The only standards of care, breach of those standards, and causal relationship
between that breach and the injury asserted by Dr. Ghadially in his report concern
"Dr. Frank Ivey" and, collectively, UTMB's "nurses." Except in regard to Dr. Ivey,
the report contains no mention of Dr. Maxwell's or any other doctor's standard of
care, breach of that standard, or causal relationship between that breach and the
injury. Nor does the report contain any mention of UTMB's standard of care, breach
of that standard, and causal relationship between that breach and the injury.

 Section 74.351(a) provides that a plaintiff shall serve an expert report no later
than the 120th day after the plaintiff has filed her original petition, unless the parties
agree, in writing, to extend the deadline. Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (Vernon Supp. 2007). Under section 74.351, a plaintiff has not served an
expert report if: (1) she has not provided any expert report within 120 days, or (2) she
has provided an expert report, but she has provided a "deficient report." See id. §
73.351(a)-(c) (Vernon Supp. 2007); Garcia v. Marichalar, 185 S.W.3d 70, 73 (Tex.
App--San Antonio 2005, no pet.). In the first situation, a trial court must dismiss the
plaintiff's claim with prejudice because either she did not provide any expert report
whatsoever or she purports to provide an expert report as to a party but, the purported
expert report is no expert report as to that party, leaving the trial court with "no
discretion" but to dismiss. Jernigan, 195 S.W.3d 94; see Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(a)-(c); Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 283-84
(Tex. App.--Austin 2007, no pet.); Garcia, 185 S.W.3d at 73-74. When a purported
expert report is no report at all as to a particular party, a trial court cannot grant an
extension to cure because the attempt to cure the report "would, in effect, [be] to
create and serve new reports" and "is conceptually no different from the situation
where a plaintiff simply missed the deadline for serving a report." Webb, 228 S.W.3d
at 283-84. In the second situation, when a plaintiff's report is "deficient," a trial
court may either dismiss the case or grant the plaintiff one extension to cure the
report, and if, after the extension, the trial court determines that the report is deficient,
then the trial court must dismiss the case because the plaintiff has not "served" an
expert report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(c); Garcia, 185
S.W.3d at 73. 

 In Garcia, where the plaintiff specifically listed the physician as a defendant
in her petition, the court of appeals held that the plaintiff did not timely serve her
expert report because the report contained no reference whatsoever to the physician. 
185 S.W.3d at 72, 74. In Jernigan, the Texas Supreme Court held that, because the
plaintiff's "expert reports omit[ted] at least one of the three specifically enumerated
requirements" for an expert report as to the defendant, a physician, the trial court had
"no discretion" but to dismiss the plaintiff's claims. 195 S.W.3d at 94. 

 Here, in his report, except in regard to Dr. Ivey, Dr. Ghadially makes no
references to any other doctor's standard of care, breach of that standard, or causal
relationship between that breach and the injury. Although Railsback, in her petition,
specifically alleges that UTMB was directly negligent, Dr. Ghadially, in his report,
makes no references to UTMB's standard of care, breach of that standard, or causal
relationship between that breach and the injury. Thus, Dr. Ghadially, in his expert
report, does not discuss UTMB's vicarious liability based on Dr. Maxwell's acts and
omissions or UTMB's direct liability with "sufficient specificity" in order to inform
UTMB of either "the conduct" which Railsback "has called into question" or to allow
the trial court, and UTMB, to determine whether her allegations have merit. See id.
at 93-94; Burkhalter, 227 S.W.3d at 227. Accordingly, we hold that the trial court
abused its discretion in not granting UTMB's motion to dismiss Railsback's claims
against UTMB for vicarious liability based on the acts and omissions of Dr. Maxwell
and UTMB's direct liability. See Tex. Civ. Prac. & Rem. Code Ann. 74.351(b).

UTMB's Vicarious Liability Based on the Acts and Omissions of Dr. Ivey and
UTMB's Nursing Staff


 UTMB argues that Railsback served a deficient expert report as to UTMB's
vicarious liability based on the acts and omissions of Dr. Ivey and UTMB's nursing
staff because "Railsback's expert report was insufficient and did not represent a good
faith effort to comply with" section 74.351. 

 Within the four corners of his report, Dr. Ghadially stated the following about
Dr. Ivey's and the nursing staff's standards of care:

Once embarked upon the surgical intervention, the applicable standard
of care as to [Dr.] Frank Ivey in the treatment of Lynda Railsback is to
take care not to injure nerves during the surgical procedure from the
tourniquet.


The applicable standard of care as to Dr. Frank Ivey in the treatment of
Lynda Railsback requires that care be taken that the tourniquet be
properly padded and maintained during the surgical procedure.


The applicable standard of care as to Dr. Frank Ivey in the treatment of
Lynda Railsback requires that care be taken that the patient's peroneal
nerve be carefully padded and protected at all times.


The applicable standard of care as to the operating room nursing staff in
the treatment of Lynda Railsback requires that care be taken that the
tourniquet be properly padded and maintained during the surgical
procedure.


The applicable standard of care as to the operating room nursing staff in
the treatment of Lynda Railsback requires that care be taken that the
patient[']s peroneal nerve be carefully padded and protected at all times.


Dr. Ghadially also stated the following about Dr. Ivey's and the nursing staff's breach
of the standards of care:

Dr. Frank Ivey [d]eviated from the applicable standard of care in the
treatment of Lynda Railsback by injuring nerves during the surgical
procedure from the tourniquet.


Dr. Frank Ivey deviated from the standard of care in the treatment of
Lynda Railsback by not carefully maintaining the tourniquet during the
surgical procedure.


Dr. Frank Ivey deviated from the standard of care in the treatment of
Lynda Railsback by not carefully protecting the peroneal nerve at all
times.


The operating room nursing staff deviated from the standard of care in
the treatment of Lynda Railsback by not taking care that the tourniquet
be properly padded and maintained during the surgical procedure.


The operating room nursing staff [deviated from the standard of care] in
the treatment of Lynda Railsback by not taking care that the patient[']s[]
peroneal nerve be carefully padded and protected at all times.


Dr. Ghadially further stated the following about the causal relationship between Dr.
Ivey's and the nursing staff's breach of the standards of care and the injury:

Lynda Railsback suffered injury to her nerve either as a result of the
tourniquet, improper tourniquet installation and padding, direct injury
through negligent surgical technique or improper care, maintenance and
use of the tourniquet or a combination of the above.


Having embarked on such a course, the new neurological complaints
and post-operative problems are a proximate result of the failure of Dr.
Frank Ivey to competently and carefully perform the operative
procedure.


Having embarked on such a course, the new neurological complaints
and post-operative problems are a proximate result of the failure of the
operating room nurses to take care that the tourniquet be properly
padded and maintained during the surgical procedure.


Dr. Ghadially additionally stated the following, in a separate header, entitled, "Facts
Supporting the Opinions Herein":

My opinions in this matter are supported by the factual evidence in the
medical records and my 28 years of experience as a practicing
[o]rthop[e]dic surgeon, as well as my knowledge of the evidence-based
peer reviewed literature.


In particular, including[,] but not limited to[,] the following[:]


a) Medical records of Dr. Christopher Wey post-operatively
(05/23/2006) indicating "who has sustained a partial sciatic nerve
palsy on the left related to the surgery[.]"


b) Medical records of Dr. Chad S. Conner and Dr. Frank Ivey p[o]st-operatively on 06/01/2005 from "[s]tatus[,] post right tibial
tubercule elevation approximately two months out with tibial and
peroneal nerve neuropathy[.]"


c) The nursing notes, "R foot numb[.]"


Medical records operative report on 03/14/2005 from Dr. Seth C.
Maxwell and Dr. Frank Ivey, "Discussed with the patient the possibility
of neurovascular damage during her surgery and possible damage when
the tourniquet was put in place." 


 UTMB argues that Dr. Ghadially's expert report is inadequate because it "does
not name the nurses that the expert accuses of breaching some unknown standard of
care," and it refers us to Norris v. Tenet Houston Health Sys., No. 14-04-01029-CV,
2006 WL 1459958 (Tex. App.--Houston [14th Dist.] May 30, 2006, no pet.) (mem.
op.). 

 In Norris, the Fourteenth Court of Appeals concluded that a plaintiff's expert
report was inadequate because the plaintiff named three nurses as defendants, and, in
the report, the plaintiff's expert referred to the nurses collectively, instead of
explaining how each nurse satisfied the requirements of section 74.351(r)(6). Id. at
*1, 3-4; see Tex. Civ. Prac. & Rem. Code Ann. 74.351(r)(6). It is true that a good
faith effort to comply with the statutory definition of an expert report "requires, as to
each defendant, a fair summary of the expert's opinions about the applicable standard
of care, the manner in which the care failed to meet that standard, and the causal
relationship between that failure and the claimed injury." Palacios, 46 S.W.3d at 878
(emphasis added). Here, however, Railsback has not sued any nurse as a defendant. 
Moreover, other courts of appeals have found adequate expert reports in cases where
a plaintiff has sued a hospital only and referred to its nurses collectively in order to
establish the hospital's vicarious liability. Kettle v. Baylor Med. Ctr. at Garland, 232
S.W.3d 832, 841 (Tex. App.--Dallas 2007, pet. denied); Tovar v. Methodist
Healthcare Sys. of San Antonio, Ltd., 185 S.W.3d 65, 70 (Tex. App--San Antonio
2005, pet. denied). Accordingly, we hold that the trial court did not abuse its
discretion in overruling UTMB's motion to dismiss Railsback's claim on this asserted
ground. 

 UTMB also argues that Dr. Ghadially's expert report is inadequate because
"[t]he report does not differentiate between the doctors, nurses[,] or staff and the
complained of acts or omission[s]," noting that "[t]here are no details that articulate
how . . . the doctors, nurses[,] or staff breached a standard of care applicable to them." 
UTMB further argues that Dr. Ghadially's expert report is inadequate because the
report "does not [specifically] detail what Dr. Ivey did to assess Railsback and what
he should have done but failed to do." 

 Regarding Dr. Ivey's and the nursing staff's standards of care and breach of
these standards, Dr. Ghadially, in his report, had to provide not just that Dr. Ivey and
the nursing staff breached their applicable standard of care during Railsback's
surgery, but "what care was expected, but not given." Palacios, 46 S.W.3d at 880. 
Dr. Ghadially stated that Dr. Ivey and the nursing staff should have carefully
maintained the tourniquet during surgery, carefully protected the peroneal nerve
during surgery at all times, and taken care that the tourniquet be properly padded and
maintained during surgery. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l).
Specifically, Dr. Ghadially, in his report, provides a fair summary of how Dr. Ivey
and the nursing staff should have prevented Railsback's injury with proper padding
and maintenance of the tourniquet. See Tovar, 185 S.W.3d at 68 (concluding that
expert report sufficiently stated what "nurses should have, but did not, do" when
nurses' applicable standard of care was to transfer patient to appropriate setting and
inform physician of status and report noted that nurses breached that standard by
"fail[ing] to perform these critical functions"). 

 Regarding the causal relationship between Dr. Ivey's and the nursing staff's
breach of the standards of care and Railsback's injury, Dr. Ghadially's report had to
"explain the bases of the statements and link his . . . conclusions to the facts" by
showing "causation beyond mere conjecture." Longino v. Crosswhite, 183 S.W.3d
913, 918 (Tex. App.--Texarkana 2006, no pet.). Dr. Ghadially's report only had to
provide a "fair summary" of his expert opinion. See Tex. Civ. Prac. & Rem. Code
Ann. 74.351(l), (r)(6). Although not ideally included under proximate causation in
his report, Dr. Ghadially references medical records which state that, at some point
before or after the surgery, Dr. Ivey discussed with Railsback the possibility of
"neurovascular damage during her surgery and possible damage when the tourniquet
was put in place." (9) Dr. Ghadially also references Dr. Christopher Wey's post-operative medical records which revealed that Railsback suffered a "partial sciatic
nerve palsy on the left related to surgery." (10) Dr. Ghadially further references Dr.
Chad S. Conner's and Dr. Ivey's post-operative medical records, which stated that
Railsback suffered "tibial and peroneal nerve neuropathy." (11) Dr. Ghadially
additionally references the nursing staff's notes, which opined, "R foot numb." Dr.
Ghadially links his conclusion regarding Dr. Ivey's and the nursing staff's alleged
breach of the standards of care with his conclusion that Railsback's injury would not
have occurred but for Dr. Ivey's and the nursing staff's failure to maintain and
properly pad the tourniquet. See Konen v. Bass, 231 S.W.3d 554, 559 (Tex.
App.--Dallas 2007, no pet.) (finding that trial court did not abuse its discretion in
concluding that causation element was satisfied when expert report stated that, but for
physician's improper placement of battery pack, plaintiff would not have suffered
nerve damage). Specifically, Dr. Ghadially, by referencing the physicians' medical
records and the nursing staff's notes, properly sets out the manner in which the
alleged failure to properly maintain and pad the tourniquet resulted in Railsback's
injury.

 In Gray, we held that, given "the conclusory, and at times inconsistent,
statements with [a doctor's] expert report, we [could not] conclude that the trial court
abused its discretion in granting [a hospital's and doctor's] motion[s] for dismissal." 
189 S.W.3d at 860. We noted that the report, which contained "only a general
statement that [the defendants] failed to monitor [the plaintiff's] left knee properly,"
did not contain "specific information about what the defendant[s] should have done
differently." Id. at 859. Also, we opined that, although "it is possible that an
identical standard of care regarding limb monitoring during and after surgery attaches
to an anesthesiologist . . . and a perioperative nursing staff . . ., such generic
statements, without more, can reasonably be deemed conclusory." Id. This, of
course, is not always so.

 In the instant case, Dr. Ghadially notes in his report that both Dr. Ivey and the
nursing staff had a duty to make sure that the tourniquet in question "be properly
padded and maintained during the surgical procedure" and that Railsback's "peroneal
nerve be carefully padded and protected at all times." He also notes that both Dr.
Ivey and the nursing staff deviated from these standards of care, resulting in
Railsback's injury.

 Unlike the expert report in Gray, Dr. Ghadially, as to UTMB's vicarious
liability based on the acts and omissions of Dr. Ivey and the nursing staff, provides
in his expert report an objective good faith effort to satisfy the two purposes of
section 74.351. (12) See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp.
2007). Dr. Ghadially informed UTMB of its vicarious liability by the failure of both
Dr. Ivey and the nursing staff to properly maintain and pad the tourniquet and make
sure that Railsback's peroneal nerve was carefully padded and protected. See
Palacios, 46 S.W.3d at 879. Dr. Ghadially also provided a basis for the trial court to
have concluded that Railsback's claims may have merit, especially in light of the
doctors' records and nursing staff's notes, which stated that Railsback suffered the
possibility of damaged nerves, paralysis, degeneration or inflammation of her
peripheral nerve, and which alluded to a numb right foot. See id. 

 Accordingly, we hold that the trial court did not err in denying UTMB's motion
to dismiss Railsback's health care liability claims as to UTMB's potential vicarious
liability based on the acts and omissions of Dr. Ivey and UTMB's nursing staff.

 We sustain in part and overrule in part UTMB's sole issue. (13)













Conclusion

 We affirm the portion of the trial court's order denying UTMB's motion to
dismiss Railsback's health care liability claims as to UTMB's vicarious liability based
on the acts and omissions of Dr. Ivey and UTMB's nursing staff. (14) We reverse the
portion of the trial court's order denying UTMB's motion to dismiss Railsback's
health care liability claims as to UTMB's vicarious liability based on both the acts
and omissions of Dr. Maxwell and UTMB's direct liability, and we render judgment
dismissing with prejudice those claims against UTMB.





 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp. 2007).
2. See id. § 74.351 (Vernon Supp. 2007). Before September 1, 2005, section 74.351(a)
required that a plaintiff, within 120 days of filing a health care liability claim, serve
on each defendant an expert report, along with the expert's curriculum vitae. See Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875,
amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1-3, 2005 Tex. Gen.
Laws 1590, 1590. Section 74.351(a) has been amended since Railsback's health care
liability claim accrued. See id. (providing that amendment took effect September 1,
2005). However, which version of the statute applies does not affect our analysis, and
we therefore cite to the current version of the statute. 
3. See Tex. Civ. Prac. & Rem. Code Ann. § 74.315(b), (l), (r)(6).
4. Drs. Ivey and Maxwell are not parties to this appeal.
5. See id. § 74.351(a).
6. See id. § 74.351(b), (l), (r)(6).
7. See id. § 74.351(l), (r)(6).
8. See id. § 74.351(b), (l), (r)(6).
9. "Neurovascular" is defined as "relating to the nerves supplying the walls of the blood
vessels." Stedman's Medical Dictionary 1214 (27th ed. 2000).
10. "Sciatic" is defined as pertaining to an area near the ischium, such as the sciatic nerve
or the sciatic vein." Mosby's Medical Dictionary 1543 (6th ed. 2003). "Ischium"
is defined as "one of the three parts of the hip bone." Id. at 933. "Palsy" is defined
as "an abnormal condition characterized by paralysis." Id. at 1267.
11. "Tibial" is defined as "pertaining to the largest long bone of the lower leg." Id. at
1713. "Peroneal" is defined as "pertaining to the outer part of the leg, over the fibula
and the peroneal nerve." Id. at 1322. "Neuropathy" is defined as "inflammation or
degeneration of the peripheral nerves, such as that associated with lead poisoning." 
Id. at 1177. 
12. Moreover, here, unlike in Gray, we review, under an abuse of discretion standard, the
trial court's ruling to deny UTMB's motion to dismiss.
13. Having held that Railsback filed no expert at all as to UTMB's vicarious liability
based on both the acts and omissions of Dr. Maxwell and UTMB's direct liability and,
also, having held that the trial court did not err in denying UTMB's motion to dismiss
as to UTMB's potential vicarious liability based on Dr. Ivey and its nursing staff, we
need not address Railsback's cross-issue, in which she requests a thirty-day extension
in order to cure any deficiencies in her expert report. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(c); Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006) (per
curiam).
14. Because Railsback did timely serve an expert report in regard to a portion of her
claims, we need not address UTMB's request for attorney's fees. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b) (stating that, if "expert report has not been served
within the period specified by [s]ubsection (a), the court, on the motion of . . . health
care provider, shall . . . award[] . . . reasonable attorney's fees").