**CHCA MAINLAND L.P. d/b/a Mainland Medical Center, Appellant,**

v.

**James M. BURKHALTER, Individually and as Independent Executor of the Estate of Glenda Burkhalter, Deceased, and Jamie N. Burkhalter and Joe E. Ferguson, II, Appellees.**

No. 01–06–00158–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 8, 2007.

John Wesley Raley, Lanette Lurleen Lutich–Matthews, Houston, TX, Michelle Elaine Robberson, Cooper & Scully, Dallas, TX, for appellant.

Sheila P. Haddock, The Law Firm of Sheila P. Haddock, PLLC, Houston, TX, for appellees.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

In this interlocutory appeal,[1] appellant, CHCA Mainland L.P. doing business as Mainland Medical Center ("Mainland"), challenges the trial court's January 25, 2006 order denying its motion to dismiss the health care liability claim of appellees, James M. Burkhalter, individually and as independent executor of the estate of Glenda Burkhalter, deceased, and Jamie N. Burkhalter and Joe E. Ferguson, II ("the Burkhalters").[2]

We reverse the trial court's January 25, 2006 order denying Mainland's motion to

---

**1.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon Supp.2006).

**2.** *See id.* § 74.351 (Vernon Supp.2006). Before September 1, 2005, section 74.351(a) required that a plaintiff, within 120 days of filing a health care liability claim, serve on each defendant an expert report, along with the expert's curriculum vitae. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1–3, 2005 Tex. Sess. Law Serv. 1590, 1591 (Vernon Supp.2006). Section 74.351(a) has been amended since the Burkhalters' health care liability claim accrued. *See id.* (providing that amendment took effect September 1, 2005). However, which version of the statute applies does not affect our analysis, and we therefore cite to the current version of the statute.

dismiss and render judgment dismissing with prejudice the Burkhalters' claims against Mainland.

## Procedural Background

In their original petition, filed on July 8, 2005, the Burkhalters sued Mainland and Dr. Robin Lynn Armstrong,[3] alleging that their negligence proximately caused the death of Glenda Burkhalter. On July 22, 2005, the Burkhalters amended their original petition, further alleging that, on or about August 28, 2003, Glenda Burkhalter sought medical care and treatment at Mainland's emergency room because she was suffering from progressive epigastric abdominal pain radiating to her back, nausea, vomiting, diarrhea, some chest pain, and palpitations. They also alleged that Mainland and Dr. Armstrong were negligent and proximately caused Glenda Burkhalter's injuries in (1) "deviating from the standard of care for treatment of gallstone pancreatitis secondary to acute common bile duct obstruction by stone(s)"; (2) "failing to properly and timely diagnosis [sic] [Glenda Burkhalter's] gallstone pancreatitis secondary to acute common bile duct obstruction by stone(s)"; (3) "failing to properly treat [Glenda Burkhalter's] condition"; (4) "failing to refer [Glenda Burkhalter] with expressed immediacy to a specialist or physician qualified to confirm diagnosis and treat [her], or to consult with such a specialist or physician concerning [her] condition"; (5) "failing to insure that [Glenda Burkhalter] was properly monitored"; and (6) "failing to admit [Glenda Burkhalter] to an intensive care unit upon discharge from the emergency room."

On August 1, 2005, the Burkhalters served Mainland with the expert report[4] of John H. Fullerton, M.D. Mainland, on August 22, 2005, filed its "Objection to Plaintiffs' Chapter 74.351 Expert Report." Mainland objected to Dr. Fullerton's report as inadequate and requested a "dismissal" of the Burkhalters' claim.[5] The Burkhalters filed a response, and, on November 18, 2005, the trial court entered a written order denying Mainland's "objections." Mainland, on December 6, 2005, filed a "Motion to Dismiss" the Burkhalters' claim based on Dr. Fullerton's "inadequate" report. The Burkhalters filed a response, and the trial court, on January 25, 2006, signed its order denying Mainland's motion to dismiss. Subsequently, on February 14, 2006, Mainland filed its notice of appeal of the January 25, 2006 order.

## Jurisdiction

■ At the outset, we address the Burkhalters' argument that Mainland's appeal is untimely because "[a] defendant seeking review of a trial court's refusal to dismiss based on an inadequate expert report must file a notice of appeal within 20 days of the order denying relief." *See* TEX.R.APP. P. 26.1(b), 28.1. They assert that "[a]lthough captioned as an 'Objection' to the expert report, Mainland's first motion specifically cited section 74.351(b) and clearly sought the relief enumerated in that subsection: dismissal and recovery of costs and attorney's fees." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2006). Therefore, because "[t]he motion was denied November 18, 2005, ... any interlocutory appeal must have been commenced no later than December 8, 2005." In response, Mainland argues that

---

3. Dr. Armstrong is not a party to this appeal.

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a).

5. *See id.* § 74.351.

because the trial court, in its first order, only denied its "objections" to Dr. Fullerton's report and did not rule on its request to dismiss the Burkhalters' claims under section 74.351(b), the November 18, 2005 order was not appealable.

Section 74.351(a) provides that within 120 days of filing an original petition in a health care liability claim, a plaintiff must serve on each defendant an expert report, along with the expert's curriculum vitae. *Id.* § 74.351(a) (Vernon Supp.2006). An expert report is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6) (Vernon Supp. 2006).

Section 74.351(*l*) provides the proper basis for lodging objections to the adequacy of an expert report. *See id.* § 74.351(*l*) (Vernon Supp.2006) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)."); *Methodist Healthcare Sys. of San Antonio, Ltd. v. Martinez–Partido,* No. 04–05–00868–CV, 2006 WL 1627844, at *2 (Tex.App.-San Antonio June 14, 2006, pet. denied) (mem. op.). Although an interlocutory appeal may be taken from an order that "grants relief sought by a motion under Section 74.351(*l*)," a defendant has no right of interlocutory appeal if the trial court denies the defendant's challenge to the ade-

quacy of an expert report under section 74.351(*l*). TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(10) (Vernon Supp.2006); *Lewis v. Funderburk,* 191 S.W.3d 756, 760 (Tex. App.-Waco 2006, pet. filed).

■ An expert report may be deemed untimely filed under section 74.351(a) if the report is served before the 120–day deadline, but deficient. *Acad. of Oriental Med., L.L.C. v. Andra,* 173 S.W.3d 184, 187 n. 5 (Tex.App.-Austin 2005, no pet.); *Martinez–Partido,* 2006 WL 1627844, at *1. If an adequate expert report "has not been served" within the 120–day period, the court, on the defendant's motion, shall, subject to section 74.351(c),[6] enter an order that "awards to the affected physician or health care provider reasonable attorney's fees and costs of court" and "dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). A person may appeal from an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351." *Id.* § 51.014(a)(9) (Vernon Supp. 2006); *see id.* § 74.351(c) (Vernon Supp. 2006).

Here, Mainland, in its August 22, 2005 "Objection to Plaintiffs' Chapter 74.351 Expert Report," in addition to objecting to the adequacy of the Burkhalters' report, also requested dismissal of the Burkhalters' claims with prejudice. However, the trial court, in its November 18, 2005 order, did not rule on Mainland's initial request to dismiss the case pursuant to section 74.351(b). Rather, the trial court only overruled Mainland's objections to Dr.

6. *See id.* § 74.351(c) ("If an expert report has not been served ... because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency.").

Fullerton's report made pursuant to section 74.351(l). We note that in order to complain of an error on appeal, the record must show that the trial court either expressly or impliedly ruled on the request, objection, or motion. *See* Tex.R.App. P. 33.1(a)(2)(A). Only after Mainland filed its subsequent "Motion to Dismiss" did the trial court enter its January 25, 2006 order denying Mainland's request for a dismissal pursuant to section 74.351(b). Accordingly, we have jurisdiction over the instant appeal of the trial court's January 25, 2006 order denying Mainland's motion to dismiss.

## Expert Report

In its sole issue, Mainland argues that the trial court, in its January 25, 2006 order, erred in denying Mainland's motion to dismiss because Dr. Fullerton's expert report "did not contain a fair summary of the expert's opinions against Mainland on any of the three elements required by section 74.351(r)(6)." Mainland asserts that the report "failed to include any standard(s) of care for the hospital or the hospital staff, and it was conclusory as to the hospital and hospital staff on the elements of breach of the standard of care and causation," and therefore "was not an objective good faith effort under section 74.351(l)."

■■■ We review a trial court's decision on a motion to dismiss a case under section 74.351(b) for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001) (holding trial court's decision to dismiss under former article 4590i, section 13.01(e), is reviewed for abuse of discretion); *Lookshin v. Feldman*, 127 S.W.3d 100, 103 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (same). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to

guiding rules or principles. *Downer v. Aquamarine Operators., Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992).

Here, the issue is whether Dr. Fullerton's report represents an objective good faith effort to comply with the statutory definition of an expert report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(l); *Palacios*, 46 S.W.3d at 878. The definition requires a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, a trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(l); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51–52 (Tex.2002) (applying former article 4590i, section 13.01(l)).

■■■ Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document. *Palacios*, 46 S.W.3d at 878. A report need not marshal all the plaintiffs' proof, but it must include the expert's opinion on each of the elements identified in the statute. *Id.* In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes

if it is to constitute a good faith effort. *Id.* at 879. First, the report must inform the defendant of the specific conduct the plaintiffs have called into question. *Id.* Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *Id.*

■ A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Id.* Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Wright,* 79 S.W.3d at 52. Nor can a report meet these purposes and thus constitute a good faith effort if it omits any of the statutory requirements. *Palacios,* 46 S.W.3d at 879. However, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Id.* The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id.*

■ Identifying the standard of care is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* at 880. While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id.* When a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See Doades v. Syed,* 94 S.W.3d 664, 671–72 (Tex.App.-San Antonio 2002, no pet.); *Rittmer v. Garza,* 65 S.W.3d 718, 722–23 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

■ Mainland argues that Dr. Fullerton's report is inadequate because he "did not include in his report any discussion of any standard of care applicable to a hospital, its nurses, or other hospital employees" and, "[a]s to Mainland, Dr. Fullerton's opinions on breach and causation were conclusory at best." Mainland asserts that "[i]n his report, Dr. Fullerton never states the standards of care applicable to a hospital or its nurses or other employees." It further asserts that "[a]lthough Dr. Fullerton states in one sentence—the only mention of the hospital or its staff in the entire expert report—that the hospital staff breached the standard of care during Glenda [Burkhalter's] hospitalization at Mainland, he does not identify how Mainland's staff breached the standard of care." Additionally, "[i]n discussing proximate causation, Dr. Fullerton does not state how any conduct of Mainland or its nurses or other employees was a proximate cause of Glenda [Burkhalter's] death," and "his opinions on proximate cause are conclusory."

In the five-page report, the only specific mention of the hospital occurs when Dr. Fullerton states that "[n]egligent care was rendered to Glenda Burkhalter and the standard of care breached—by Dr. Armstrong, the treating physicians (including the hospitalists), and the hospital staff-during her hospitalization at Mainland Medical Center." However, the report fails to mention the appropriate standard of care specifically in regard to Mainland, its nurses, and its staff. The report similarly fails to identify specifically how Mainland, its nurses, or staff breached that standard of care. Nor does the report explain any causal relationship between the acts of Mainland, its nurses and staff, and the injuries of Glenda Burkhalter. Thus, the report omitted the statutory elements of the Burkhalters' claim against Mainland. *See* Tex. Civ. Prac. & Rem.Code

ANN. § 74.351(*l* ), (r)(6); *Jernigan v. Langley,* 195 S.W.3d 91, 94 (Tex.2006).

The Burkhalters argue that because they allege in their petition that Dr. Armstrong was acting as the hospital's "agent, servant, and/or employee," that "each statement regarding Dr. Armstrong may implicate Mainland." However, the Burkhalters cite no authority for the proposition that, by alleging in a petition that a doctor is acting as an "agent, servant, and/or employee" of a hospital, an expert report may be adequate under section 74.351 in regard to a hospital. Moreover, Mainland notes that "Dr. Fullerton did not state that his opinions against Dr. Armstrong would also apply against the hospital because of the Burkhalters' pleading that Dr. Armstrong was an agent of the hospital."

Because Dr. Fullerton's expert report omits at least one of the three specifically enumerated requirements of section 74.351(r)(6) in regard to Mainland, it cannot constitute an objective good faith effort to meet the statutory requirements. *See Jernigan,* 195 S.W.3d at 94. Accordingly, we hold that the trial court erred in denying Mainland's December 6, 2005 motion to dismiss the health care liability claim of the Burkhalters.

## Conclusion

We reverse the trial court's January 25, 2006 order denying Mainland's motion to dismiss and render judgment dismissing with prejudice the Burkhalters' claims against Mainland.[7]

---

7. We note that, in its brief, Mainland did not request an award of reasonable attorney's fees. *See id.* § 74.351(b)(1).