IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
════════════
No. 06-1028
════════════
John Leland, D.D.S., 
Petitioner,
v.
George C. Brandal and Ruth L. Brandal, 
Respondents
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
Argued November 
14, 2007
 
Justice Brister, 
dissenting.
 
I agree that 
plaintiffs have 120 days after filing suit to serve expert reports. I also agree 
voluntary supplementation does not bar them from obtaining a 30-day extension. 
But I disagree that expert reports found deficient on 
appeal should be remanded for an extension to start the process all over again. 
The Legislature mandated that health-care claims must be dismissed within the 
first 4 or 5 months unless supported by an expert report; today’s decision 
extends that deadline to 4 or 5 years. As this completely frustrates the 
Legislature’s intent, I respectfully dissent.
Section 
74.351 of the Civil Practice and Remedies Code requires health-care claimants to 
provide supporting expert reports early in the litigation. Subsection (a) says 
the reports are due 120 days after filing. Subsection (b) says the trial court 
must dismiss the case if no report is served by then. But subsection (b) is 
subject to subsection (c), which allows the trial court to grant a single 30-day 
extension if it finds a report deficient:
 
If an 
expert report has not been served within the period specified by Subsection (a) 
because elements of the report are found deficient, the court may grant one 
30-day extension to the claimant in order to cure the deficiency.
 
How this 
was intended to work is plain from the statute’s structure: 
 
(a) the plaintiff files a report, 
 
(b) if it the trial court finds the report deficient it must 
dismiss the case or 
 
(c) grant an extension.
 
But the Court 
changes that structure (and radically extends the timetables) by inserting in 
this sequence a reversal on interlocutory appeal. While the statute does not 
expressly say which court the Legislature had in mind when addressing reports 
that “are found deficient,” for four reasons it could not have been an appellate 
court after an interlocutory appeal.
First, 
section 74.351 says nothing about interlocutory appeals or appellate courts. As 
“the court” granting an extension in 74.351(c) can only be the trial court (as 
the Court in effect concedes by remanding to that court to decide this matter) 
construing the section to include the court of appeals requires us to change 
courts in mid-sentence. The only court mentioned anywhere in the 
subchapter on expert reports is the trial court. Interlocutory appeal is 
provided by section 51.014 of the Civil Practice and Remedies Code — a different 
statute in a different code. While section 51.014 does refer to section 74.351, 
so do other statutes like section 160.053 of the Occupations Code,[1] and surely nobody believes extensions are 
available if the Texas Medical Board finds a report deficient. So when section 
74.351 addresses extensions after reports “are found deficient,” there is no 
reason to presume it refers to any court other than the only one referenced in 
the same sentence — the trial court.
Second, the 
30-day extension in section 74.351 is usually, as we recently held, 
“inseparable” from a trial court’s denial of a physician’s motion to dismiss.[2] The statute requires neither written 
motion nor even oral request for an extension; it simply allows trial judges to 
grant extensions sua sponte if they find a report deficient. Thus, a trial 
judge confronted with a deficient report has two choices: (1) dismiss or (2) 
grant a short extension. Today’s decision creates a third choice: (3) deny the 
motion altogether, and then grant an extension years later if reversed on 
appeal. This looks a lot like the waste and delay the Legislature intended to 
stop.
Third, a 
substantial part of the state’s appellate resources are already being expended 
reviewing preliminary expert reports; today’s decision 
will likely double that load. The Court remands so the trial court can 
consider granting an extension, but that is a foregone conclusion — any 
self-respecting trial judge who found the first report sufficient would feel 
compelled on remand to find the same report was a good faith effort. New reports 
will then be filed, challenged,[3] and appealed again no matter what the 
trial judge rules. One interlocutory appeal is enough; two on preliminary 
matters like this are too many.
Fourth, the 
Court’s construction of section 74.351 effectively frustrates its purpose. There 
is no question what that purpose was: to cutoff prolonged litigation if no 
qualified expert could support the plaintiff’s case.[4] The Legislature repeatedly found that 
traditional rules of litigation — like waiting until trial to see if a plaintiff 
could produce an expert — had created a crisis in the cost and availability of 
medical care in Texas.[5] Any ambiguity in whether 74.351 allows post-appeal extensions must be construed in favor of 
this intent.[6]
But the Court 
does the opposite. Even though three years have passed since the Brandals filed this case, the Court says they can get 
another 30 days to finally get their reports right. That, as just noted, will 
likely lead to another round of appeals. So instead of 
getting a sufficient report or dismissal within 4 or 5 months as the Legislature 
intended, health-care providers may not get what they deserve for 4 or 5 
years.
If the Brandals were surprised that the court of appeals found 
their reports deficient, they should not have been. They claimed their dentist, 
Dr. Leland, caused George Brandal’s stroke by advising 
him to discontinue anticlotting medications before 
extraction of multiple teeth. Dr. Leland specifically challenged their expert 
report on causation because their expert was an anesthesiologist who stated no 
qualifications regarding heart medications or strokes. Recognizing the omission, 
the Brandals supplemented his report, but the only 
information added about his qualifications was the following:
 
Anesthesiologists are 
frequently asked to care for patients similar to Mr. Brandal. In my years of practice of Anesthesiology I have 
taken part in the care of scores of patients like Mr. Brandal who are at risk for stroke or heart attacks and are 
taking these medicines. Many of them were having open heart operations with all 
of the problems of severe disease and bleeding. Thus I have had considerable 
work experience with these drugs and have great respect for their potency.
 
As the court 
of appeals correctly held, this is not enough. Everything in this paragraph 
could also be said about nurses, who frequently care for patients at risk for 
stroke and surely have great respect for the related medications, but who 
undoubtedly are not qualified to opine on causation. We cannot presume all 
physicians are qualified to testify about what caused George Brandal’s stroke;[7] the plaintiffs knew this was the 
objection but simply failed to answer it.
I share the 
Court’s reluctance to dismiss claims like this when reports are found deficient 
only on appeal.[8] But of course there are many instances in 
which parties do not get a second chance after an appellate court dismisses 
their claims or defenses. In enacting section 74.351, the Legislature intended 
to favor the public interest over the private interests of particular 
plaintiffs.[9] Grace periods and extensions were 
concessions the Legislature made while trying to establish firm rules to stem a 
serious problem; continuing judicial reluctance to enforce those rules may 
eventually encourage the Legislature to grant no concessions at all.
 
            
________________________________
            
Scott Brister
            
                                                            
            
Justice
OPINION 
DELIVERED: June 13, 2008 






[1] 
See Tex. Occ. 
Code § 160.053 (requiring health care 
insurers to forward section 74.351 reports to Texas Medical 
Board).

[2] 
Ogletree v. Matthews, ___ S.W.3d ___, ___ (Tex. 2007) (“[T]he 
actions denying the motion to dismiss and granting an extension are 
inseparable.”).

[3] 
For example, in addition to challenging the qualifications of the Brandals’ expert, Dr. Leland raised five other challenges to 
their expert reports.

[4] 
In re McAllen Medical Ctr., Inc., ___ 
S.W.3d ___, ___ (Tex. 2008).

[5] 
Id. at 
___.

[6] 
Tex. Gov’t Code § 311.023 (“In 
construing a statute, whether or not the statute is considered ambiguous on its 
face, a court may consider among other matters the: (1) object sought to be 
attained; . . . (5) consequences of a particular 
construction . . . .”).

[7] 
In re McAllen, ___ S.W.3d at ___ (quoting 
Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996)).

[8] 
It is not true, as the Court asserts, that courts always remand for a possible 
extension after finding a report deficient. See, e.g., 
CHCA Mainland, L.P. v. Burkhalter, No. 
01-06-00158-CV, 2007 WL 686679, *5 (Tex. App.—Houston [1st Dist.] Mar. 8, 2007, no pet.) (finding 
reports deficient and rendering judgment); Methodist Healthcare Sys. of San Antonio, Ltd. v. Martinez-Partido, 04-05-00868-CV, 2006 WL 1627844 (Tex. App.—San 
Antonio 2006, pet. granted) (same).

[9] 
Tex. Gov’t Code § 
311.021(5).