Opinion issued January 8, 2009 

















In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00417-CV
____________

CHING-CHIANG CHU, M.D.; THOMAS JACKSON CARTWRIGHT,
M.D.; AND K.S.F. ORTHOPAEDIC CENTER, P.A., Appellants

V.

JERRY ROBERT FIELDS, MYRNA FIELDS, INDIVIDUALLY AND A/N/F
OF BRITTAIN TAYLOR FIELDS AND EMILY BROOKS FIELDS,
Appellees
 

 
 
On Appeal from the 215th Judicial District Court of
Harris County, Texas
Trial Court Cause No. 2007-46354
 





MEMORANDUM OPINION

          This is an interlocutory appeal from the trial court’s refusal to dismiss a lawsuit
after it determined a medical expert report was adequate. Dr. Thomas Jackson
Cartwright and K.S.F. Orthopaedic Center, P.A. (collectively “Cartwright”) and Dr.
Ching-Chang Chu appeal from an order denying their motions to dismiss the claims
filed by appellees, Jerry Fields, Myrna Fields, Individually and A/N/F of Brittain
Taylor Fields and Emily Brooke Fields (collectively “the Fieldses”). In a sole issue,
Chu and Cartwright each assert that the trial court abused its discretion by finding the
expert report filed by the Fieldses was an objective, good-faith effort to comply with
the requirements of the Texas Civil Practice and Remedies Code. We conclude the trial
court erred by finding the report met the requirements for medical expert reports. We
therefore reverse the trial court’s order refusing to dismiss the lawsuit and remand.
Background
          For several months, Jerry Fields (“Fields”), who was 36 years of age, was
evaluated for headache complaints by Cartwright at K.S.F. Clinic. On June 28, 2005,
Fields told Cartwright he felt pain throughout his body, with numbness, tingling and
loss of balance. Cartwright referred Fields to Chu, a neurologist, for a neurological
evaluation. Chu saw Fields once, on July 12, 2005. Chu recorded in Fields’s chart that
Fields was there for consultation for headaches that began about two years ago and had
recently gotten worse. The headaches were severe and frequent, causing Fields to
awaken from sleep. Fields also reported frequent dizziness. Chu scheduled an MRI
to take place the same week. Two days after his appointment with Chu, Fields went
to a hospital emergency room after passing out on the kitchen floor. An emergency
CT revealed a “mixture of parenchymal and subarachnoid blood anteriorly.” Fields
was then urgently transferred to another hospital, where he underwent surgery for a
subarachnoid hemorrhage.
          The Fieldses brought suit against Chu and Cartwright, filing the expert opinion
of Dr. Levine within 20 days of the original petition. Chu and Cartwright timely filed
motions to dismiss, objecting to the adequacy of the report. After a hearing, the trial
court found Levine’s report insufficient and granted a 30-day extension to cure the
deficiency. When the Fieldses filed Levine’s amended report, Chu and Cartwright
again timely filed motions to dismiss based on a complaint about the adequacy of the
report. The trial court denied the motions to dismiss.
Waiver
          The Fieldses assert that Chu and Cartwright waived any objections to Levine’s
report by participating in discovery. However, the Fieldses did not present this
complaint to the trial court. Because the Fieldses never obtained an adverse ruling on
this matter from the trial court, they have not preserved this issue for appellate review. 
See Tex. R. App. Proc. 33.1; De Mino v. Sheridan, 176 S.W.3d 359, 373 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied). 
Requirements for Review of Expert Report
          Appellate review of an expert report requires examination of the standard of
review for review of the trial court’s decision and the applicable law that sets forth the
requirements for the report.
          A.      Standard of Review
          We review a trial court’s decision on a section 74.351(b) motion to dismiss for
an abuse of discretion. See Tex. Civ. Prac. & Rem. Code Ann. 74.351(b) (Vernon
Supp. 2007); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875
(Tex. 2001) (citing predecessor statute); Gray v. CHCA Bayshore L.P., 189 S.W.3d
855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference to guiding
rules or principles. See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999). When
reviewing matters committed to the trial court’s discretion, we may not substitute our
own judgment for that of the trial court. Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48,
52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides
a discretionary matter differently than an appellate court would in a similar
circumstance. Gray, 189 S.W.3d at 858. However, a trial court has no discretion in
determining what the law is or in applying the law to the facts. Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992); Baylor Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916
(Tex. App.—Dallas 2007, pet. filed).
          B.      The Statutory Requirements
          Within 120 days of filing an original petition in a healthcare liability claim, the
plaintiff must provide the defendant with an expert report representing an objective,
good-faith effort to comply with the statutory definition of an expert report. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2007); Palacios, 46 S.W.3d
at 878. The definition requires “a fair summary of the expert’s opinions as of the date
of the report regarding applicable standards of care,” “the manner in which the care
rendered by the physician or health care provider failed to meet the standards,” and “the
causal relationship between that failure and the injury, harm, or damages claimed.” 
Tex. Civ. Prac. & Rem. Code Ann. 74.351(r)(6) (Vernon Supp. 2008). If a plaintiff
timely files an expert report and the defendant moves to dismiss because of the report’s
inadequacy, a trial court must grant the motion “only if it appears to the court, after
hearing, that the report does not represent an objective good faith effort to comply with
the definition of an expert report in Subsection (r)(6).” Id. § 74.351(l).
          The only information relevant to our inquiry is within the four corners of the
report. Palacios, 46 S.W.3d at 878. A report need not marshal all the plaintiff’s proof,
but it must include the expert’s opinion on each of the elements identified in the statute. 
Id. In setting out the expert’s opinions on each of those elements, the report must
provide enough information to fulfill two purposes to constitute a good faith effort. Id.
at 879. First, the report must inform the defendant of the specific conduct that the
plaintiff has called into question. Id. Second, and equally important, the report must
provide a basis for the trial court to conclude that the claims have merit. Id.
          A report that merely states the expert’s conclusions about the standard of care,
breach, and causation does not fulfill these two purposes. Id. Rather, the expert, in his
report, must explain the basis of his statements to link his conclusions to the facts. 
Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002). Also, a report cannot
meet these purposes and constitute a good faith effort if it omits any of the statutory
requirements. Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). 
However, to avoid dismissal, a plaintiff need not present evidence in the report as if it
were actually litigating the merits. Palacios, 46 S.W.3d at 879. The report can be
informal in that the information in the report does not have to meet the same
requirements as the evidence offered in a summary judgment proceeding at trial. Id.
          When a plaintiff sues more than one defendant, the expert report must set forth
the standard of care for each defendant and explain the causal relationship between
each defendant’s individual acts and the injury, i.e., “[c]ollective assertions of
negligence against various defendants are inadequate.” Taylor v. Christus Spohn
Health Sys. Corp., 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.);
see CHCA Mainland L.P. v. Burkhalter, 227 S.W.3d 221, 227 (Tex. App.—Houston
[1st Dist.] 2007, no pet.). This includes a hospital if a plaintiff is alleging that the
hospital itself was directly negligent, rather than just alleging that the hospital was
liable due to vicarious liability. Biggs, 237 S.W.3d at 912, 919 (Tex. App.—Dallas
2007, pet. filed) (finding that reports did not satisfy required elements of expert report
when hospital sued for malpractice); Burkhalter, 227 S.W.3d at 224, 227 (holding that
report did not satisfy required elements of expert report when hospital sued for
negligence). But see Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex.
App.—Dallas 2006, no pet.) (concluding that plaintiffs need not mention hospital in
expert report when plaintiffs limited their claim against hospital to vicarious liability
for employees).
          C.      Law Concerning Standard of Care and Breach of Standard of Care
          An expert report must give “a fair summary of the expert’s opinions as of the
date of the report regarding applicable standards of care.” Tex. Civ. Prac. & Rem.
Code Ann. 74.351(r)(6) (Vernon Supp. 2008). Identifying the standard of care is
critical: whether a defendant breached his or her duty to a patient cannot be determined
absent specific information about what the defendant should have done differently.
Palacios, 46 S.W.3d at 880. While a “fair summary” is something less than a full
statement of the applicable standard of care and how it was breached, a fair summary
must set out what care was expected, but not given. Id.
          D.      Law Concerning Causation
          The report must give the causal relationship between the doctor’s failure and the
injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. 74.351(r)(6)
(Vernon Supp. 2008). Causation is established when “the negligent act or omission is
shown to be a substantial factor in bringing about the harm and without which the harm
would not have occurred.” Kramer v. Lewisville Mem’l Hosp., 858 S.W.2d 397, 400
(Tex. 1993).          
The Expert Report Concerning Chu
          Chu challenges the adequacy of the report to state a standard of care and
causation.
          A.      Standard of Care
          Chu asserts the standard-of-care opinions are vague and not identified. Chu
contends the report “does not identify what proper treatment or assessment is with
respect to what Dr. Chu should have done.” Chu also challenges the report’s references
to “care in an urgent care setting and emergency room presentation” by pointing out
that Chu never saw Fields in an emergency room or urgent care setting. 
           Levine’s report contains a section entitled “The Standard of Care for Dr. Chu
as it Applied to Mr. Fields on 7/12/05.” The report lists six areas, labeled a through
f, purporting to describe what the standard of care was for Dr. Chu. The report states
that the standard of care Chu should have met was to have: a.Performed a proper, thorough, successful and immediate
assessment of Mr. Fields’ headache complaints (see
American Academy of Neurology 1994, American College
of Emergency Physicians 1996, Cinch 2001, the US
Headache Consortium 2001, Jagoda et al 2002, Wears
2002, Aygun and Bildik 2003, and Peters 2004) as Mr.
Fields’ headaches were progressing and worsening
 
b.Performed a proper, thorough, successful and immediate
treatment of Mr. Fields’ headache complaints
 
c.Performed a proper, thorough, successful and immediate
assessment of Mr. Fields’ recent neurological changes as
it was the nature of these recent neurological changes that
otherwise prompted Dr. Cartwright to refer Mr. Fields for
a neurological consultation with Dr. Chu
 
d.Performed a proper, thorough, successful and immediate
treatment of Mr. Fields’ recent neurological changes
 
e.Recorded the succinct details of Mr. Fields’ history of
arterial hypertension
 
and
 
f.Recorded Mr. Fields’ blood pressure value(s) on 07/12/05.
 
          Although the report lists six areas that purport to state the standard of care for
Chu, four of those areas are inadequate in that they do not refer to any specific
conduct that Chu was to perform. In a, b, c, and d, the report says Chu should have
given care that was “proper, thorough, successful and immediate.” The report fails
to include specific information about what care Chu was expected to give. See 
Palacios, 46 S.W.3d at 879 (holding report must inform defendant of specific conduct
plaintiff has called into question); see also Norris v. Tenet Houston Health Sys., No.
14-04-01029-CV, 2006 WL 1459958, *7 (Tex. App.—Houston [14th Dist.] May 30,
2006, no pet.) (mem. op.) (finding standard-of-care opinion insufficient when report
stated what defendant should have known but not what defendant should have done).
The trial court therefore abused its discretion if it determined that a reference to care
as “proper, thorough, successful and immediate” was sufficient to state a standard of
care. See id.
          The remaining two areas in the report are sufficient to describe a standard of
care by stating that Chu should have recorded “succinct details of Mr. Fields’ history
of arterial hypertension” and “recorded Fields’ blood pressure value(s) on 07/12/05.”
We therefore turn to whether the report establishes causation for Chu’s failure to
record the details of Field’s blood pressure on a single day and the history of
hypertension.
          B.      Causation
          Chu asserts that Levine’s causation opinions are vague, speculative, and
conclusory. Chu contends Levine’s causation opinions fail to establish “but for” the
acts of Chu, Field’s injuries would not have occurred. 
          The report does not show how Chu’s failure to record the details of Field’s
blood pressure on a single day and to record the history of hypertension caused
Field’s injury. See Costello v. Christus Santa Rosa Health Care, Corp., 141 S.W.3d
245, 249 (Tex. App.—San Antonio 2004, no pet.) (holding report inadequate to show
how medical provider’s “failure to act was a substantial factor in bringing about”
injury since it offered “no explanation of what medical information a more timely
triage and evaluation would have revealed, nor does he state what would have been
done had Christus not failed to act, what treatment would have or could have been
available, that the patient was a candidate for the unknown treatment, or that the
unknown treatment could have or would have been effective”). We conclude the
report does not show causation for the injuries to Fields based on the standard of care
Levine states that Chu should have met. See id. 
          Levine’s report does not have any section specifically describing causation,
although he does have sections specifically stating the standard of care and breach of
standard of care. Because there is no section that directly discusses causation, we
have examined the entire report for any statements that the trial court could have
determined were sufficient to show causation. 
          Levine says Chu breached the standard of care in that Chu did nota.      Assure that Mr. Fields’ headaches were immediately and
successfully diagnosed in terms of etiology for his headache
complaints
 
         (1)     Dr. Chu was required to perform an immediate review of
the actual head CT scan images previously obtained,
either by himself or with a Radiologist or
Neuroradiologist, as said review would have, more likely
than not, revealed succinct findings of a symptomatic-yet-unruptured intracranial aneurysm
 
         (2)     After said immediate review, Dr. Chu was then required
to have arranged for Mr. Fields’ [sic] to be further studied
with an immediate (“stat’) set of new brain images
                                       =A “stat” head CT scan with CT angiographic 
                                       images of brain arteries
=Or a “stat” head MRI scan with MR
angiographic images of brain arteries
=Or a “stat” catheter-driven cerebral
angiogram
 
         (3)     Or and if Dr. Chu did not have immediate access to the
previously-obtained head CT scan images, he was then
required to have arranged for Mr. Fields to be further
studied with an immediate (“stat”) set of new brain images
                                       =A “stat” head CT scan with CT angiographic 
                                       images of brain arteries
=A “stat” head MRI scan with MR
angiographic images of brain arteries
                                       =Or a “stat” head CT scan-plus-a “stat”                                                   catheter-driven cerebral angiogram
 
b.      Assure that Mr. Fields’ headaches were immediately and
successfully treated
 
         (1)     An immediate diagnostic evaluation, as outlined above,
would have succinctly lead to an immediate diagnosis of
an unruptured intracranial aneurysm
 
         (2)     After said diagnosis was immediately made, Dr. Chu was
then required to have arranged for Mr. Fields to have been
immediately (“stat”) seen in Neurosurgical consultation
 
         (3)     Said consultation would have directly lead to either an
immediate craniectomy, an immediate endovascular s [sic]
surgery, or both
 
         (4)     Said surgical procedure or combined surgical procedures,
while carrying a very small risk of peri-operative
complication, would then have directly allowed Mr. Fields
to remain, much more likely than not, stroke-free
 
         . . . .
 
         4.      Further and in relation to the substandard care provided by
Dr. Chu:
 
                   a.       By failing to comply with the necessary standard of
care as outlined above and specifically by failing to
properly and immediately diagnose and properly
and immediately treat or refer for immediate
treatment of Mr. Fields’ changing headache
condition, Dr. Chu, more likely than not, caused
Mr. Fields’ unruptured intracranial aneurysm to
remain undiagnosed and untreated
 
                   b.       Because Mr. Fields’ soon-to-rupture aneurysm was
not diagnosed in a timely manner, said aneurysm
ruptured and caused the development of both a
subarachnoid as well as intraparenchymal brain
hemorrhage.           Even if we assume that the trial court looked to other parts of the report for an
implicit statement on the standard of care since the section on standard of care was
deficient for the reasons we have noted above, our decision remains the same. For
example, in the section describing the breach of the standard of care, Levine discusses
what Chu’s standard of care should have been by stating that Chu “was required to
perform an immediate review of the actual head CT scan images previously obtained
. . . [o]r and if Dr. Chu did not have immediate access to the previously-obtained head
CT scan images, he was then required to have arranged for Mr. Fields to be further
studied with an immediate (“stat”) set of new brain images.” According to the report,
“an immediate diagnostic evaluation, as outlined above, would have succinctly lead
to an immediate diagnosis of an unruptured intracranial aneurysm,” which would then
have required Chu “to have arranged for Mr. Fields to have been immediately (“stat”)
seen in Neurosurgical consultation,” which “consultation would have directly lead to
either an immediate craniectomy, an immediate endovascular s [sic] surgery, or both,”
which “would then have directly allowed Mr. Fields to remain, much more likely than
not, stroke-free.” Although this section discussing the breach of the standard of care
contains some details about the standard of care, it fails to show how Chu caused
Fields’s injuries. The report does not show how, within the two days between when
Chu saw Fields and the time Fields passed out, Chu could have obtained CT scans
and arranged for Fields to have a neurosurgical consultation. Moreover, the report
assumes that a neurological consultation would be obtained within two days and that
the neurologist would find the injury and operate before the time Fields passed out. 
The report is conclusory and speculative in that it assumes successful diagnosis and
treatment by neurological and surgical intervention by unknown physicians. See
Jones v. King, 255 S.W.3d 156, 159–60 (Tex. App.—San Antonio 2008, pet. denied)
(finding expert’s causation opinion conclusory because report did not explain how
breach caused injuries or state that injuries would not otherwise have developed). We
conclude the report does not show causation for the injuries to Fields based on the
standard of care Levine states that Chu should have met. See id. We hold the trial
court erred by determining that the report met the requirements for medical expert
reports. See id.
           We sustain Chu’s sole issue. 
The Expert Report Concerning Cartwright
          Cartwright challenges the adequacy of the report to state causation by asserting
it is conclusory as to causation and fails to establish “but for” the acts of Cartwright
that Fields’s injuries would not have occurred. Levine’s report does not have any
section that directly addresses how Cartwright’s actions caused Fields’s injuries,
although is does have separate sections describing standard of care and breach of
standard of care. Because no section of the report directly addresses causation, we
examine the entire report for any statement the trial court could have determined
showed causation. 
          In the section that discusses breach of the standard of care by Cartwright,
Levine determined Cartwright failed to
 
a.Assure that Mr. Fields’ risk of stroke, by immediately recognizing
his changed neurological status, was minimized
 
b.Assure that Mr. Fields’ risk of stroke, by immediately arranging
for a “stat” neurological consultation, was minimized 

          and
 
c.Assure that Mr. Fields’ risk of stroke, by recording his blood
pressure values and if elevated by assisting Mr. Fields in
immediate treatment of his elevated blood pressure readings, was
minimized.

The report next states that 
 
Standard and successful recognition of this necessary change in Mr.
Fields’ neurological status would then have, more likely than not,
prevented his July 2005 ‘frank’ brain hemorrhage as his unruptured
intracranial aneurysm would have been both diagnosed as well as
successfully treated 

Levine later gives a summary of his opinions by stating,
 
.         b.       To have remained, more likely than not, stroke-free and brain
injury-free, Mr. Fields’ yet-unruptured intracranial aneurysm
would have either been treated by the appropriate neurosurgeon
(with a one-time 3-4% perioperative risk for ‘open’ aneurysm
clipping) or by the appropriate endovascular surgeon (with a
one-time 2-3% perioperative risk for catheter-driven, coil-embolization of his intracranial aneurysm) 
 
          c.       To have remained, more likely than not, neurologically normal,
an immediate and appropriate diagnosis of Mr. Fields’ changing
headache condition would have been necessary as, otherwise,
his risk of an eventual subarachnoid hemorrhage remained as
high as 4-5% per year
 
          d.       To have remained, more likely than not, neurologically normal
and stroke-free, Mr. Fields’ arterial hypertension would have
been continually and successfully treated in a [sic] effort to
eliminate this as one of his putative stroke risk factors

          Nowhere in his report does Levine explain how Cartwright’s breach caused
Fields’s injuries. Levine simply states that if Cartwright had recognized a change in
Fields’s neurological status, Fields would have been correctly diagnosed and
“successfully” treated. Levine’s opinion is conclusory because he does not state how
Cartwright’s recognition of a change would have led to a correct diagnosis and
successful treatment. See Jones, 255 S.W.3d at 159–60; Craig v. Dearbonne, 259
S.W.3d 308, 313 (Tex. App.—Beaumont 2008, no pet. h.) (finding expert’s causation
opinion conclusory because statements of causation were not linked to facts).
          We conclude that Levine’s report provides only a conclusory explanation of
causation as to Cartwright. We therefore hold that the report does not represent a
good-faith effort to comply with the requirements of an expert report. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(1). 
          We sustain Cartwright’s sole issue. 
Conclusion
          We sustain the sole issue in this appeal. We reverse the trial court’s order
denying the motions to dismiss, and remand this case to the trial court to award Chu
and Cartwright any reasonable attorney’s fees and costs of court and to dismiss with
prejudice the Fieldses’ claims against Chu and Cartwright. See id. § 74.351(b). 
 
                                                             Elsa Alcala
                                                             Justice 
 
Panel consists of Justices Taft, Keyes, and Alcala.