# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00717-CV

**Vivek Goswami, M.D. and Austin Heart, PLLC, Appellants**

**v.**

**Nancy Jo Rodriguez, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
## NO. D-1-GN-14-000903, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Vivek Goswami, M.D. and Austin Heart, PLLC challenge the trial court's order denying their motion to dismiss brought pursuant to section 74.351(b) of the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code §§ 51.014(a)(9) (authorizing appeal from interlocutory order denying relief sought under section 74.351(b) of TMLA), 74.351(b) (generally requiring dismissal of health care liability claim on motion of affected physician or health care provider when claimant fails to comply with expert report requirement). Because we conclude that the expert report is deficient, we reverse the trial court's order denying the motion to dismiss and remand the case to the trial court to consider whether a thirty-day extension is appropriate. *See id*. § 74.351(c) (allowing one thirty-day extension when court finds expert report deficient).

## BACKGROUND

Appellee Nancy Jo Rodriguez sued appellants and others asserting health care liability claims stemming from Rodriguez's use of the drug Pradaxa.[1] Rodriguez was a patient of Austin Heart, and one of her cardiologists at Austin Heart was Dr. Goswami. In her petition, Rodriguez alleges that Dr. David Kessler, another cardiologist with Austin Heart, ordered that she stop using Pradaxa; Dr. Goswami did not follow this order; and, "[a]s a result of her continued use of Pradaxa, [she was] admitted to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding, known side effects of the over-use of Pradaxa"; and she "suffers severe, painful, and life-threatening injuries due to her continued use of Pradaxa." Rodriguez timely served appellants with an expert report and the expert's curriculum vitae.[2] *See id.* § 74.351(a) (requiring claimant asserting health care liability claim as threshold matter to serve expert report with curriculum vitae "for each physician or health care provider against whom a liability claim is asserted").

Appellants objected to the expert report and filed a motion to dismiss Rodriguez's claims against them on the grounds that the report was insufficient and constituted "no report at all." *See id.* § 74.351(b) (requiring trial court to dismiss claims on motion of affected health care provider or physician if expert report not served within 120-day window); *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) (discussing when expert report is "really no report at all" in

---

[1] A separate interlocutory appeal from the same underlying proceeding is pending before this Court in cause number 03-14-00765-CV. In that case, Rodriguez appeals the trial court's order dismissing her claims against the Walgreen Company and Sara Elizabeth McGuire, a pharmacist, arising from the same allegations concerning Rodriguez's use of Pradaxa. *See* Tex. Civ. Prac. & Rem. Code § 74.351(*l*).

[2] Rodriguez served reports from two different experts, but there is no dispute that the other report does not apply to appellants.

context of whether trial court should grant extension to allow claimant to cure deficiency in report).

Appellants asserted that the report failed to set forth the applicable standard of care or explain how the standard of care was breached or how any such breach caused Rodriguez's alleged injuries. Rodriguez filed a response to appellants' objections and motion to dismiss, but she did not amend the expert report. After a hearing, the trial court found that the expert report complied with section 74.351 of the TMLA and denied appellants' motion to dismiss. This appeal followed.

## ANALYSIS

*Chapter 74 Expert Report Requirements*

Section 74.351 of the TMLA provides a 120-day window for a claimant, who is asserting a health care liability claim, to serve each defendant physician and health care provider with an expert report with the expert's curriculum vitae. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby*, 346 S.W.3d at 554. "A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)).[3]

---

[3] Section 74.351(r)(6) of the Texas Medical Liability Act (TMLA) defines an expert report to mean:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the

3

On the motion of an affected defendant physician or health care provider, the trial court must dismiss the case if the claimant fails to serve an expert report within the 120-day window. Tex. Civ. Prac. & Rem. Code § 74.351(b). If the claimant timely files an expert report, a trial court should not grant a motion challenging the report's adequacy unless "it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). The Texas Supreme Court has defined a "'good faith effort' as one that provides information sufficient to (1) 'inform the defendant of the specific conduct the plaintiff has called into question,' and (2) 'provide a basis for the trial court to conclude that the claims have merit.'" *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001))). The court also may grant one thirty-day extension to the claimant to cure a deficiency in a timely-filed report. Tex. Civ. Prac. & Rem. Code § 74.351(c); *see Scoresby*, 346 S.W.3d at 554, 559 (holding that "document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit" and noting that "Legislature has likewise recognized that when an expert report can be cured in thirty days, the claim is not frivolous").

---

standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

To determine whether an expert report complies with section 74.351, courts consider the information "found within the four corners of the expert report, which need not 'marshall all the plaintiff's proof' but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation." *Jelinek*, 328 S.W.3d at 539 (quoting *Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879)). The "'report cannot merely state the expert's conclusions about these elements,' but 'the expert must explain the basis of his statements to link his conclusions to the facts.'" *Id.* (quoting *Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999))); *see Shenoy v. Jean*, No. 01-10-01116-CV, 2011 Tex. App. LEXIS 10212, at *16 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, pet. denied) (mem. op.) (noting that "an expert report that merely asserts that a defendant physician's breach caused the plaintiff's injury without providing a factual basis does not provide the trial court with the information necessary to evaluate the merits of the plaintiff's claim"). "This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Wright*, 79 S.W.3d at 53; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

We review a trial court's denial of a motion to dismiss brought under section 74.351(b) for an abuse of discretion. *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013) (citing *Palacios*, 46 S.W.3d at 877). "Under that standard, appellate courts defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). "A trial court

abuses its discretion if it rules without reference to guiding rules and principles." *Id.* With these standards in mind, we turn to appellants' issues.

*Adequacy of Expert Report*

In two issues, appellants contend that the trial court abused its discretion when it found that the expert report was adequate and when it denied their motion to dismiss brought under section 74.351(b) of the TMLA. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Appellants argue that the expert report does not constitute a good faith effort to comply with the requirements of section 74.351 because it fails to provide any facts surrounding the care and treatment provided by appellants and offers only conclusory opinions that do not link facts to the expert's conclusions on the statutory elements of standard of care, breach, and causation. We turn then to review the information "found within the four corners of the expert report." *See Jelinek*, 328 S.W.3d at 539.

After describing his qualifications and the records that he reviewed to form his opinions, the expert, who was a cardiologist, opined in total:

> In my opinion the care and treatment provided to Nancy Jo Rodriguez by Austin Heart fell below the accepted standards of care in the following particulars: Despite Dr. David Kessler, one of her cardiologists from Austin Heart, requesting that the Pradaxa be discontinued (in this patient who, at best, has bipolar disorder and at times was confused, this was a reasonable request), Pradaxa therapy nevertheless was continued after her acute hospitalization. This request to stop the medication was not appreciated by her primary cardiologist, Dr. Vivek Goswami (who was in the same group as Dr. Kessler). Furthermore, Ms. Rodriguez appeared to be obtaining refills for this medication authorized by nurses and staff of this same heart group who recommended discontinuing this medication (Austin Heart). The standard of care would have been to follow the orders of Dr. Kessler to stop the administration of Pradaxa.

6

Failure to discontinue the use of Pradaxa was a direct cause of her subsequent acute admission to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding—known side effects of the over-use of Pradaxa. Ms. Rodriguez's entire hospitalization was attributable to the failure to stop Pradaxa therapy as ordered by Dr. Kessler. More likely than not, had the Pradaxa medication been discontinued as requested, Ms. Rodriguez's hospitalization would never have needed to take place.

I hold these opinions to a reasonable degree of medical certainty. They are based upon my education, training and experience as well as the records which I have reviewed.

According to the report, Rodriguez's claim is based on her use of Pradaxa after Dr. Kessler "request[ed] that the Pradaxa be discontinued." The report, however, does not reference underlying facts concerning her care and treatment by appellants, but rather it contains only conclusory statements such as the "request to stop the medication was not appreciated by" Dr. Goswami and Rodriguez "appeared to be obtaining refills for this medication authorized by nurses and staff of this same heart group." For example, facts missing from the report include whether Dr. Goswami had any reason to know of Dr. Kessler's order, when Dr. Kessler made the alleged request, to whom the request was communicated, whether appellants treated or had contact with Rodriguez after the request, or the circumstances in which Rodriguez obtained the prescription and refills on the prescription. *Compare Gray*, 189 S.W.3d at 859–60 (upholding dismissal of claims against medical center and doctor based on inadequate expert report and noting that conclusory statements do not satisfy requirements of section 74.351), *with Van Ness*, 461 S.W.3d at 142–44 (reciting facts contained in expert report and concluding that trial court did not abuse discretion "by determining that report was not conclusory" and that it was "good faith effort to comply with the TMLA's requirements"); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496–99

7

(Tex. App.—Dallas 2010, no pet.) (affirming trial court's denial of motion to dismiss claims alleging doctor negligently prescribed drug and describing specific facts contained in report that addressed standard of care, breach, and causation).

The report also fails to "fairly summarize the applicable standard of care," "explain how [appellants] failed to meet that standard," or "establish the causal relationship between the failure and the harm alleged." *See Potts*, 392 S.W.3d at 630; *see also Jelinek*, 328 S.W.3d at 539–40 (explaining that "expert cannot simply opine that the breach caused the injury" but that "expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented"). In the report, the expert states that the "standard of care would have been to follow the orders of Dr. Kessler to stop the administration of Pradaxa," but he does not differentiate between appellants, the individual Goswami or Austin Heart. *See Gray*, 189 S.W.3d at 859 (concluding that trial court did not abuse discretion in finding expert report inadequate that stated, "without explanation, that a single standard of care applied to both" the medical center and the doctor and noting that "such generic statements, without more, can reasonably be deemed conclusory"); *Strom v. Memorial Hermann Hosp. Sys.*, 110 S.W.3d 216, 222 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (describing standard of care for health care provider or physician to be "what an ordinarily prudent health-care provider or physician would have done under the same or similar circumstances").

The expert also does not provide "specific information about what [appellants] should have done differently." *See Palacios*, 46 S.W.3d at 880; *CHCA Mainland L.P. v. Burkhalter*, 227 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting that identifying

8

standard of care in expert report "critical" because "whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently"). And the expert does not present facts to explain "how and why" appellants' alleged breach of the standard of care caused Rodriguez's alleged injuries. *See Jelinek*, 328 S.W.3d at 539–40. "[N]either the trial court nor this Court may infer additional opinions or underlying facts to fill in gaps that the report itself leaves open." *Hebert v. Hopkins*, 395 S.W.3d 884, 890 (Tex. App.—Austin 2013, no pet.) (citing *Palacios*, 46 S.W.3d at 878; *Wright*, 79 S.W.3d at 53); *see Smith v. Wilson*, 368 S.W.3d 574, 576 (Tex. App.—Austin 2012, no pet.) (noting that trial court should confine inquiry to four corners of expert report when adequacy of report challenged and that report must link conclusions to facts); *Webb*, 228 S.W.3d at 279 (precluding court from "filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended").

Because the expert report fails to provide a basis to conclude that Rodriguez's claims have merit, *see Jelinek*, 328 S.W.3d at 539, we conclude that the trial court abused its discretion when it found that the expert report complied with section 74.351 of the TMLA and denied appellants' motion to dismiss. *See Moreno*, 401 S.W.3d at 44. On this basis, we sustain appellants' issues.

*Thirty-day Extension*

Rodriguez asks this Court, should it conclude that the expert report is deficient, to remand the case to the trial court so the trial court can consider whether to grant a thirty-day extension to cure any deficiency in the report. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c) (authorizing court to grant one thirty-day extension to cure deficiency in report); *Leland v. Brandal*,

9

257 S.W.3d 204, 207–08 (Tex. 2008) (noting that section 74.351(c) "does not allow for an extension unless, and until, elements of a report are found deficient, and that did not occur in this case until the court of appeals so held" and, in that context, concluding that court of appeals had discretion to remand "consideration of the extension issue to the trial court").

Appellants argue that Rodriguez is not entitled to an extension because her report does not meet the Texas Supreme Court's "minimal standard" for a trial court to consider an extension and that the report is "no report at all." *See Scoresby*, 346 S.W.3d at 557 (stating "minimal standard" for trial court to grant extension and holding that trial court has discretion to grant extension "if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated"); *Fung v. Fischer*, 365 S.W.3d 507, 535–36 (Tex. App.—Austin 2012, no pet.) (discussing *Scoresby* standard for granting extension to cure deficient expert report and difference between deficient report and report that is "so deficient as to constitute 'no report'"), *overruled in part on other grounds by Potts*, 392 S.W.3d 625.

The report, however, was prepared by an expert who claimed expertise as a cardiologist, opined that Rodriguez's claims against appellants have merit, and implicated the conduct of appellants. *See Scoresby*, 346 S.W.3d at 557. Further, the trial court concluded that the report was adequate so Rodriguez has not had an opportunity to cure. In this context, we remand the case to the trial court for it to consider whether to grant one thirty-day extension. *See Leland*, 257 S.W.3d at 207 (collecting cases in which courts of appeals, upon finding reports deficient, remanded cases to trial court to decide whether to grant thirty-day extension to cure deficiencies).

## CONCLUSION

For these reasons, we reverse the trial court's order denying appellants' motion to dismiss and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Remanded

Filed:　January 27, 2016